ONEBEACON AMERICA INSURANCE COMPANY et al., Plaintiffs, v NEWMONT MINING CORPORATION et al., Respondents, and AMERICAN HOME ASSURANCE COMPANY et al., Appellants, et al., Defendants. ONEBEACON AMERICA INSURANCE COMPANY et al., Appellants-Respondents, et al., Plaintiff, v NEWMONT MINING CORPORATION et al., Defendants, and ALLSTATE INSURANCE COMPANY et al., Respondents, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al., Respondents-Respondents. [918 NYS2d 470]—

With regard to the first order under review, assuming arguendo that New York has general jurisdiction over Newmont, it does not have jurisdiction over Dawn as a mere department of Newmont. As stated in the case on which plaintiffs and the

insurer defendants primarily rely, "New York courts regard one factor as essential to the assertion of jurisdiction over a foreign related corporation . . . Th[at] essential factor is common ownership . . . [N]early identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes" (*Volkswagenwerk AG. v Beech Aircraft Corp.*, 751 F2d 117, 120 [2d Cir 1984]). It is undisputed that Newmont owns only 51% of Dawn and that the other 49% is owned by a corporation independent of Newmont. This does not constitute common ownership (*see e.g. Antares Aircraft L.P. v Total C.F.P.*, 1991 WL 19997, *4, 1991 US Dist LEXIS 1511, *10 [SD NY 1991], *affd* 948 F2d 1275 [2d Cir 1991] [51.8% not enough]; *Levy v Plastocks, Inc.*, 744 F Supp 570, 572 [SD NY 1990] [50% not enough]).

New York does not have long-arm jurisdiction over Dawn pursuant to CPLR 302 (a) (1) on the theory that Newmont was acting as Dawn's agent when it purchased the insurance policies at issue (*see Insurance Co. of N. Am. v EMCOR Group, Inc.*, 9 AD3d 319 [2004]). There is no evidence that Dawn exercised control over Newmont with respect to Newmont's purchase of insurance (*see Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

The motion court properly exercised its discretion in denying the insurers' request for jurisdictional discovery. As the court noted, the relationship between Newmont and Dawn has been thoroughly explored in a trial in another case. Furthermore, no amount of jurisdictional discovery will change the fact that Newmont owns only 51% of Dawn or that Newmont controlled Dawn, and not the other way around (*see generally Putter v North Shore Univ. Hosp.*, 7 NY3d 548, 554 [2006]).

With regard to the second order under review, Newmont was entitled to renewal of its motion to dismiss on grounds of forum non conveniens. In support of renewal, Newmont presented the new fact that the federal court presiding over the substantially parallel action in the State of Washington had determined not to dismiss or stay that action in favor of this one. Upon consideration of the pendency of the Washington action and all other relevant circumstances, we find that the motion court improvidently exercised its discretion in retaining jurisdiction, since Newmont established that New York is an inconvenient forum (*see e.g. Anagnostou v Stifel*, 204 AD2d 61 [1994]).

The subject matter of both this action and the Washington action—insurance coverage for environmental liability relating to a uranium mine (the Midnite Mine) in the State of Washington—has no substantial connection to New York. Of the 11 insurers

seeking to litigate in New York, only three excess insurers, neither of which is a plaintiff, have their principal places of business in New York and only one is a New York corporation. Newmont, the insured, is a Delaware corporation, headquartered in Colorado, which has no offices in New York and has had no presence in New York since 1989. Dawn, the Newmont subsidiary that operated the Midnite Mine, is not even subject to jurisdiction in New York, as discussed above; hence, all interested parties cannot be joined in this action. It is undisputed that in prior coverage litigation it was held that Colorado law applies to virtually all of the policies at issue. Further, the underlying CERCLA action is being litigated in Washington State federal court, before the same judge presiding over the parallel coverage action.

The Washington federal court is a superior forum for resolution of this coverage dispute because all necessary parties are before that court; by contrast, Dawn, as noted, cannot be compelled to litigate in New York. Accordingly, our responsibility to promote judicial efficiency and to discourage duplicative and piecemeal litigation warrants our deference to the coverage action in Washington.

The superiority of the Washington forum is undiminished by the purported coverage disputes having nothing to do with the Midnite Mine raised by plaintiffs and by one defendant, Insurance Company of North America (INA), in a cross claim. The claims for declaratory relief based on these "disputes," relating to mining activities at three other mines (in California, Arizona and Peru), have no substantial connection to New York, and reduce to little more than notices sent by Newmont's broker, with perfunctory responses by some of the insurers, which then slept languidly for some 10 years before being roused by plaintiffs and INA. Even assuming these alleged disputes are justiciable, they are plainly unrelated makeweights that lend no credence to the notion that there is more to this action than a coverage dispute concerning a mine in Washington. Moreover, the insurers raising these issues have not given us any reason to conclude they could not raise their claims in their responsive pleadings in the Washington action.

In view of the foregoing, Newmont's appeal of the first order under review is rendered academic. Concur—Friedman, J.P., Catterson, McGuire, Acosta and Renwick, JJ.